15 minutes per side. Mr. Kerlin, you may proceed. Is there another counsel? Over here, over here. Okay, great. Thank you. Good morning. May it please the court. Douglas Curlew on behalf of officers Saxe, Reed, Hoyer, and Hall. I have reserved seven minutes for rebuttal. I have some well rehearsed and very well prepared opponents. I thought it perhaps should save extra time for my rebuttal period. But honestly, I have very little to add, nothing to add to what was already in the briefs. If I were to prepare a speech for today, I would have simply recited what was in the reply brief that was previously filed. I know the court's read it. And by reference, I'm sure the court will review that again. I just want to emphasize that the content of the evidence in this case, particularly the video, needs to be recognized in the context from the perspective of the officers in the situation they faced. This is not a situation where, like the cases I've cited, the Dorsey case, the Humphrey case, the Houston case, there was miscommunication and all kinds of misunderstandings between the officers. The communication here was clear. The officers understood they were looking for somebody who had been fleeing and eluding in a car and who had been in a wreck and the car had drug paraphernalia in it. You'd be suspecting you'd find some individual, not too far from the car scene, who might not be in the best state of mind. And that's what they encountered here at 2.30 in the morning on Neighborhood Street in Grand Rapids, where you don't usually find a lot of people, they found Mr. Colzer. So that justified three knee strikes? No. What justified the strikes was that he wasn't complying with their commands. Why do you say that? I don't see that on the videos. I've watched the videos. I see the videos as inconclusive. And he says that he was complying. And you agree that a denial of qualified immunity, we must accept the facts as alleged by the plaintiff, right? Sure. Are you doing that here? We agree. Are you accepting the facts as alleged by them? Yes. But he did not resist. But he never said he was complying. I don't believe that was ever stated. And we don't agree that he was complying. You didn't fight back. You could use the force, the knee kicks. If he's not complying, you can assault him. In the situation we have here, the purpose was to take him to the ground. Remember, they're looking for someone who was in a vehicle that had a weapon. As far as they know, from their perspective, this lone individual out in the middle of the night came from that vehicle that fled and eluded a felony, had drugs, felony, and had a weapon. They had mistaken, okay? Mistaken. The belief that he had been in that car and he could have a weapon. And they pegged him because they thought he was fleeing from that scene. Their intent was to get control of him. The trial testimony, which we've included in our brief, the original brief, the principal brief, is that we wanted to get a hold of his hands because we didn't know what he had. He's got a backpack. He's got a sweatshirt. Who knows what kind of weapon he might have? The idea was to get a hold of his hands. It's all on video. I know it is. I don't want to do that. Thank you for doing this, but we can see it, and it looks excessive. There's no other way to put it. It would be foolhardy for me to sit here and tell you, no, you're seeing the video wrong. I agree with you. I'm not going to waste my time doing that. How about the name identification? So you think one explanation for all of this drama is that he refuses to give his name. Correct. Which is quite astonishing since he does give his name, and then when they ask again, I mean, you can hear the name on the videos. You're kind of trying to figure out why is one of these. Is it four officers that are needed to take down a .20 inebriated guy? Is that what it is? Is it four? How many is it? How many were there ultimately? There were four there.  So is it still part of your theory of the case that he refused to give his name? Well, he gave his name. You can hear it. We can hear it as we listen to the video. Okay, so that's why I'm asking. Does that prove that you concede that he did give his name? He gave his name, sure. But remember, the officer then asked again, whether the officers heard it or not is another matter that we can't speak to. Well, we accept the facts as alleged by the plaintiff, not by the defendant. He said I said my name. He didn't say the officers heard me. He can't say that. I'm sorry. I didn't hear your response. I mean, he can say I said my name. So you think it's an issue of law every time the claimant doesn't deny whether someone heard them? Come on. You wouldn't have jury trials. Well, let me move on, because obviously I see we have a difference of opinion on the video. But let me point out that in the cases that we've cited, the officers can make a mistake as to their perception as to what the position of the suspect is. Well, this is why I'm trying to get to the name point, because the name point seems to have two components to it. Okay. One is he does say his name. Like, we can hear it. We listen. We watch. He says it. For some reason, we'll assume good faith, someone didn't hear it and therefore asks again. Correct. At that point, he says, well, wait, what's going on here? I don't have to give you my name. That's what he said. And then the officer says, okay. Well, whether that was okay, we don't need your name, or okay, that's how it's going to be. Back to a jury dispute. Back to a fact dispute. Right? Well, I think since the burden is on Mr. Colzer to present significant probative evidence, in opposition to the officers, he hasn't. He didn't present anything. He's just got the same video. He needed to present something more than what he's presented. No, I don't understand why the video isn't suffice to let a case go to a jury trial. That's what the case is going to be. And as shown by the difference of perception of you and us, that might happen within a jury trial. Well, we got the situation when we looked from the perspective of the officers. The officers make a reasonable mistake. Was it reasonable? Let's just say the video should be interpreted exactly as this panel has obviously interpreted it. Well, given the inferences. We're trying to assume the inferences could go a certain way. Right, but can the officers still be reasonable in their mistake, even if, remember, they're not seeing it on the video after the fact. I mean, I watched it. I'm sure the court did. You didn't watch the video just once. The mistake would justify maybe the Terry stop. I appreciate the mistake point. They're looking for someone. This guy's got different colored clothes, and I'm not sure. There's a lot of reason to think this was the suspect, but that would justify the stop. It was really escalated from there, and that's what we're having issues with. Well, I saw the word escalate. That was put in the Appley brief. I don't think it was particularly escalated. What it was was you had the normal situation where you push against the hood. That was put in Reed's testimony at the trial. You push against the hood. Initially, that's the normal procedure, and then you take to the ground. All they did was take him to the ground. Well, there's the knee strike. Well, I know. There were knee strikes to try to get him to put his arms behind the back on the ground, but put your arms behind your back. He wasn't doing that. He was resisting to put it. He was not resisting, but he wasn't putting his arms behind his back. He wasn't complying. Not resisting in the sense of struggling against, but he was not complying. I would grant you it was probably he was just too drunk to know what he was supposed to be doing, but the officers can't make that assumption either. They don't know he's been out drinking a fifth of alcohol and watching that basketball game. They don't know why his responses are like that. It's a very fast period of time, and they didn't get to see it twice. They only saw it in real time once. I mean, I looked at it again and again. You probably looked at it again and again. I'm sure the opponent looked at it again and again. We didn't have that opportunity for the officers to do that. They had to take it as it came, very quickly, with everybody moving at once, everybody talking at once, to get the guy against the hood, then on the ground, get those handcuffs on. And remember, when the trial court judge, or I should say, when the preliminary examination judge in Michigan saw it, he said his interpretation was that the officers' actions were lawful. And I explained the entire collateral estoppel effect of that in the brief. I don't think we need to go through the gymnastics of that. I think we actually do have to go through estoppel, because the plaintiff makes the argument that there is no estoppel here because they never had an opportunity to appeal the probable cause finding because of the not guilty verdict. And isn't that a correct statement of the law? That there is no finding as to probable cause if there is no right to appeal.  One, we're only looking, is there probable cause for the arrest at the outset, not whether there was probable cause to convict. But that's what your estoppel is, right? That's what you want to use the finding of probable cause from the criminal case to apply here. But the argument is you can't do that because they never had the right to appeal it. What's wrong with that argument? Well, because as I point out in the brief, the collateral estoppel in Michigan does allow an appeal from the probable cause determination at the preliminary examination. But it's not an appeal of right. Well, it is by leave granted, yes. Okay, but isn't that a problem? Well, you can appeal. Because when he wins, he can't get his normal appeal of right. So I think that's what Judge Griffin's asking. So why don't you just give us, you're past your time. Give us one quick answer on this, and then you can keep the rest of your time for rebuttal and come back to it if you wish. Okay. But what's your one-sentence answer to that point? Is it just doesn't matter? No, I'm going to say with the collateral estoppel or with the action file? Collateral estoppel. Okay. It's discretionary as opposed to as of right. I'd point the court to the quote from Judge Friedman in the Eastern District explaining how in Michigan this is a normal process where it's frequently appealed.  All right. So the idea is it's a pretty good option. It's a very good option. Okay. Excellent. I don't think it is. I sat on the Michigan Court of Appeals, and we very rarely granted an interlocutory appeal prior to trial length. Another materials dispute of fact. Well, but I think it's theoretical, I suppose. But in practice, it's not a real option. Right. But in my experience, though, what he'd be talking about, what he'd be appealing, is from the preliminary district court finding to the circuit court. That's where I see these appeals happen all the time. Okay. I think you're right, from district to circuit. But even that's interlocutory. Okay. Thank you. All right. Good morning. Good morning. May it please the Court. I'm Colter Paulson of Squire Patten Boggs and Sixth Circuit Clinic at the University of Cincinnati. On behalf of Kevin Kelzer, two 3L law students, Stephen Cordell and Griff Bloodworth, will be taking the argument today. All right. And we'll ignore the normal prohibition on dividing argument. But for today, it's going to work. Good morning. Good morning.  May it please the Court. Stephen Cordell from the Sixth Circuit Clinic. On behalf of Kevin Kelzer, I will take six minutes on crossover estoppel, and my co-counsel will take nine minutes on qualified immunity and jurisdiction. The officers have failed to show that crossover estoppel applies for three reasons. First, the issue before this court today is not the issue that was litigated in state court. The state court looked at whether the officers could stop and frisk under Terry. This court is looking at whether the officers could apply physical force and arrest Mr. Kelzer. In its oral ruling in Mr. Kelzer's misdemeanor case, the state court made clear that its decision was confined to Terry and to Houston, two cases that involve investigatory detention with reasonable suspicion, not probable cause. But the officers' argument on collateral estoppel depends on probable cause, and they have failed to show, as they are required to do under People v. Gates, that the state judge clearly, definitely, and unequivocally held that they had probable cause to arrest Mr. Kelzer. Does this prove that you concede that the officers did have appropriate probable cause, reasonable suspicion for the stop? We do not, Your Honor. We just note that the Terry stop is not at issue here. It's only the excessive force claim and the probable cause claim. Then why can't you concede it? If it doesn't matter, why not just say we don't care? Well, the state judge was just looking at probable cause. So that's all that was at issue here. And in his ruling, the state judge never once says the word probable cause, and the term probable cause never comes up. And moreover, under two Michigan court cases, Quinn and Moreno, both of which Well, how can we use the state court ruling if we can use it at all? You seem to be saying it's okay to use the state court ruling, you just can't use it for the things that really matter here. Is that what you're saying? No, Your Honor, we don't think it's proper to use the state court ruling at all. Okay, why is that? Because the issues are different, and also because Mr. Kelzer didn't have a full and fair opportunity to appeal. So this court squarely addressed the full and fair opportunity in Bradley and held that when a plaintiff does not or a litigant does not have the chance to appeal, preclusion cannot apply. And although Bradley was decided under Ohio law, it is not distinguishable here because both Ohio and Michigan follow Section 28 of the Second Restatement of Judgments, which says no appeal, no preclusion. The officers argue that Mr. Kelzer had the chance to file a What's your best case on the point we were just discussing with your friend, which is discretion as opposed to appeal of right? What's your best case that tells us what to do with that setting? So our best case on that is Bradley. Bradley said no appeal, no preclusion. And Mr. Kelzer could not have obtained the Was that a setting where they did have an option to appeal? It was just discretionary? No, and Mr. Kelzer did not have an option here to appeal because under the Michigan court rules, two Michigan court rules, 7.105 and 7.103, provide that Mr. Kelzer would only have been able to appeal had he otherwise lost the right by waiting until final judgment. And since Mr. Kelzer didn't lose the right to appeal by waiting until final judgment, he couldn't have taken Are you saying you can never have an interlocutory appeal in this setting under state law? You can have an interlocutory appeal in Michigan, and that comes up a lot in the context of double jeopardy claims, of evidence suppression claims. But in this interlocutory posture in a misdemeanor case, Mr. Kelzer would have to have shown that he would have otherwise lost his right to appeal under the Michigan court rules in order to have an appellate court even hear his claim. And he could not do that. Why not? Because if he wins the underlying case, he doesn't have a right to appeal the stop. That's just what happened. The issue of appeal and losing the right is focused only in the instances of conviction, not in acquittal. This court said similarly in Bradley that a litigant on acquittal, a defender on acquittal, doesn't have a right any longer in his appeal. So Mr. Kelzer didn't have the ability to appeal. And third and finally, this court need not even reach the merits of crossover estoppel because it does not have jurisdiction. It does not have jurisdiction under the collateral order doctrine, and it does not have pendant jurisdiction because these claims are not inextricably intertwined. Under two cases from this court, Bunkley and Siggers, only when the issue of qualified immunity necessarily resolves the estoppel issue are these issues inextricably intertwined and is jurisdiction. I think your time is running out, but real quickly, why aren't they inextricably intertwined? They're not inextricably intertwined because this court can answer whether a constitutional right was violated and whether that constitutional right was clearly established without ever looking at what was decided in the state court, without looking at issues of tarry, without looking at issues of reasonableness, or whether Mr. Kelzer had the chance to appeal. But if there was crossover estoppel, that would not be true. No, Your Honor, because the underlying inquiry for qualified immunity does not decide the estoppel inquiry. And that's evidenced by the officer's brief because they consider the issues differently. And on page 38, thank you, Your Honor. All right, we'll hear from you. Your initial point, why didn't your client challenge the probable cause conclusion the officers had reached when he was arrested? In other words, you say it was just limited to the challenge that Terry's got. Why didn't he challenge the probable cause? So Mr. Kelzer could not have challenged the probable cause under two Michigan court cases, Quinn and Moreno, both cited by the officers in their principal brief, that make probable cause and the underlying lawfulness of the arrest an actual element of the crime of resisting arrest, and therefore a question for the jury. And the trial judge explicitly reserves and says all questions of fact are reserved for the jury. The trial court was just looking at the reasonable suspicion and could not even as a matter of law have considered the probable cause for the underlying arrest. Thank you. Good morning. Good morning. Your Honors, and may it please the court, Griff Bloodworth on behalf of Kevin Kelzer. The district court denied the officers qualified immunity because it found disputes of material fact. I think this court has recognized, and it's questioning today, that it's very easy to find disputed facts in this case. The officers argue throughout their brief that Mr. Kelzer resisted, Mr. Kelzer obstructed, that he didn't comply, but this flies in the teeth of Mr. Kelzer's repeated assertions that he was doing absolutely nothing except, quote, listening to them. They had decided I was not following their commands. And at trial, Mr. Kelzer was at his criminal trial in the state court. You think you obeyed all their commands about putting your hands on your head? Mr. Kelzer responds, yes, ma'am. The district court found. So he was very drunk, like .24? Yes. I mean, very drunk. Certainly. Mr. Kelzer was certainly inebriated. So we're supposed to accept his, I think you would admit, very affected memory. We have the video. But in terms of how he describes things, do we discount that at all because he was double or triple the legal limit? I've seen no evidence that this court generally discounts the statements of those who are inebriated, though I'm sure it can take that into consideration. I mean, he was really, really drunk. I will concede that. I will concede he was very drunk, Your Honor. But I will also say that the video is certainly ambiguous on this point and to not accept Mr. Kelzer's sworn statements here would be drawing inferences from that video in favor of the moving party in this case. We could just look at the video. We could just look at the video. Your Honors are welcome to look at the video and see if it blatantly contradicts any of the sworn statements here. And we are very confident that nothing in that video blatantly contradicts that Mr. Kelzer was complying with the officers. Certainly they were moving his hands around constantly, but they had grips on both of his arms at the time. How about just the mistake idea? That would seem to be the best argument your friend on the other side had, that in a worst-case scenario there were misunderstandings, not hearing him give name, misinterpreting what he's doing when he's tensing his arms. They're the ones with experience. Why isn't it just a mistake? And if it's a mistake, they get qualified immunity. So a couple of responses to that, Your Honor. First, with regard to the mistake regarding the moving of the arms, I think I'm standing a little too close to the mic. With regard to the mistake with the moving of the arms, they had grips on his arms at that moment. So there's at least a dispute of fact as to whether one of the officers was the one moving his arms. They had been moving him constantly throughout this encounter, trying to get his backpack off of him and shifting him around. So the video doesn't clearly indicate that Mr. Kelzer even drooped his own elbow. You're trying to make the point that one officer creates the movement that the other officer responds to? Is that what you're trying to say happened? Well, that one officer created the movement, and then all of them, including the officer who created the movement, responded to it. It would have been Officer Sachs. Isn't that back to mistake land? Well, certainly not for the officer who created the movement in the first instance, Your Honor. An officer can't move his arm and then mistake the movement he created. But I thought your point was that one officer moves it, and that leaves the other officer to ratchet up the aggressiveness, you know, fingers and eye, knee strikes. Well, at a minimum, the first— Because you're not able to say the person that allegedly moved the arm is the one that did the knee strike. Well, I'm not—and that would not be seeable in the video. That would be very difficult to deserve for the video, Your Honor. I will say that Officer Sachs, who is the one on his right hand, which is the arm primarily at issue here, is one of the officers who is primarily using the force to slam him against the hood of the car in the first instance. In that case, the beginning of the force that was used against Mr. Kelzer in response to the mistaken alleged resistance here is the very officer who would have been in the position to move the arm in the first instance. But these are all very complicated factual questions about who saw what, who did what, when. And I'd like to impress that this is very much having to draw a bunch of inferences from a video that is quite difficult to discern inferences from. These are quintessential jury questions is what I'm trying to get at here. And that's all we're asking for in this case is to let these go to a jury. And there's also, throughout this whole discourse, there's also the issue of whether, even if Mr. Kelzer had drooped his arm, whether any reasonable officer would have perceived that as active resistance. This court has let such questions go to the jury before in Smith v. City of Troy in 2017. This court had a plaintiff who physically yanked his arm out of an officer's grasp. This court denied qualified immunity and said that whether any such movement was minimal, such that the leg sweep maneuver in that instance was excessive, was a question of fact for a jury. Likewise, more recently... So what's your response to the point that they were afraid he had a gun, so that what looks from the video is fairly aggressive and it escalates quickly, as you say, but why can't that be justified on the ground that they thought they had the right suspect and that's a suspect who they thought would have a gun? And does that change things? So in the first instance, they were aware that it was a BB gun they had found in the vehicle, and I think I understand that the officers make some contentions about that, but I will point that out in the first case. So this case would change? They'd be all right if it had been a regular gun? No, I don't think they would be all right. Let's deal with that assumption. All right. So if they had found a Glock in the car, then you would still have the fact that they didn't have probable cause to believe Mr. Kelzer was a fleeing, eluding suspect at the time, and that any force used against him in the first instance would still need to be predicated on some degree of resistance. They couldn't come up to him, have hands on both of his arms, and choose to slam him on the vehicle, throw him on the ground, unless he was resisting or trying to elude them. And this goes back to these same sort of factual disputes about who saw what, whether Mr. Kelzer moved his arm, who moved Mr. Kelzer's arm. These all bottom on this very, very fact-intensive question that is not at all clearly depicted on the video. Well, factual disputes cannot be appealed, denial of qualified immunity. So do we even have jurisdiction over this? I think we have jurisdiction over the estoppel argument, because that's a pure issue of law. But all this other stuff, to me, I agree with you. There's all sorts of factual disputes. But isn't our law quite subtle? We don't even have jurisdiction, right? I agree with Your Honor that this court does not have jurisdiction. Is that the remedy, then, to dismiss for lack of jurisdiction rather than to affirm the denial of summary judgment as to these factual disputes? We certainly think that that is the most logical resolution of this case. Is that the best for your client? So option A, no jurisdiction, no Sixth Circuit ruling, and whether there's a triable issue of fact for a jury. Option B, there is a triable issue of fact for the jury. If you went in the jury trial on remand, there's nothing to appeal. Which is better for your client? We think that in terms of what's better for our client, I think either works well for the client, because there's still going to be a risk of appeal. Either is a great option when you're not sure how the other two work. But it doesn't seem to me like either is equally good. Why isn't it obvious that the best thing for your client is to get the Sixth Circuit saying there's a triable issue of fact with respect to this set of facts in this video? There's nothing to appeal if you win a jury verdict. If there's no jurisdiction, there's no Sixth Circuit law on whether there's a triable issue of fact. So after the jury trial, you run the risk of a court saying there wasn't a triable issue of fact. This shouldn't have gone to a jury. So we still believe in Mr. Kelter's argument, and we think we can win them now, and we can win them on appeal. The reason we have raised jurisdiction is that this court does have an unflagging responsibility to examine jurisdiction, so we're trying to help the court on that and trying to help the court police its direction. No, no, no. My question was, which would you rather have? Which would I rather have? I mean, I think our client is very comfortable with either ruling. Okay, good. Thank you. Thank you. We'll get rebuttal. Just a quick note on the BB gun. As your mother probably warned you, you can still put somebody's eye out with a BB gun. They do inflict harm. A gun is a gun, even if that was all he might have had with him. But the officers didn't know that knife gun. Who knew what he might have had? As far as this court's precedents, drunkenness itself, and that was highlighted in the last argument there, makes a person unpredictable, and it by itself justifies the precaution of handcuffing. That's in the Martin v. City of Taylor case that I cited, and that has been reiterated in other decisions by this court afterwards. So the officers have a guy. They think he might have a weapon. They think he's fleeing and eluding. Maybe all mistaken, but they had reason, especially when he's drunk, to try to get more control of him and handcuff him for the sake of maintaining that control. The only other point I will make, in fairness to counsel, since I used so much extra time previously, is they point out that the actual element of letting this go to trial in the state court was that the officers acted lawfully. They're right. That is an actual element. And that's why the state district court had to rule that all the officers' actions, not just the stop, not just the initial stop, but the officers' use of force in the handcuffing had to be lawful because if anything the officers had done was unlawful, that would have allowed Colzer to resist and would have undone the probable cause for him to have gone to the criminal trial. The judge made very clear that he had to rule on everything. Colzer's own motion said, the reason this should be dismissed is because I was jumped, I was attacked. Five overzealous officers aggressively pushed me against the police cruiser, assaulted and battered me into the true cruiser, and ultimately onto the street. That's the entirety of all the wrestling they did that's seen in the video. And the judge in the state district court said, no, the officers acted lawfully, so there is probable cause for you to go to trial. Now, there wasn't enough to convict ultimately, but there was enough to go to trial, and that's all we need for the officers to have been justified in their actions at their point in time that they acted. If the court has questions, I'll take them. Otherwise, I'm done. We're fine. Thank you very much.  Thank you, Mr. Curlew. And Mr. Polson, thank you for supervising the students. Nice job, Mr. Porter and Mr. Bloodworth. I hope you're done with exams. If you're not, good luck on the trip back. But you did a great job on behalf of your clients, so thank you very much. We really appreciate it. The case will be submitted, and the clerk may call the next case.